TIMOTHY W. SNIDER, OSB No. 034577
timothy.snider@stoel.com
NATHAN C. BRUNETTE, OSB No. 090913
nathan.brunette@stoel.com
**STOEL RIVES LLP**
760 S.W. Ninth Ave., Suite 3000
Portland, OR 97205
Telephone: (503) 294-9557

DOUGLAS A. MIRO (*pro hac vice*)
dmiro@arelaw.com
OLIVIA A. HARRIS (*pro hac vice*)
oharris@arelaw.com
**AMSTER ROTHSTEIN & EBENSTEIN LLP**
405 Lexington Avenue
New York, NY 10174
Telephone: (212) 336-8000

FLOYD A. MANDELL (*pro hac vice*)
floyd.mandell@katten.com
JULIA L. MAZUR (*pro hac vice*)
julia.mazur@katten.com
MATTHEW HARTZLER (*pro hac vice*)
matthew.hartzler@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe St.
Chicago, IL 60661
Telephone: (312) 902-5200

*Attorneys for Defendant/Counter-Claimant, Steven Madden Ltd.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| AIRWAIR INTERNATIONAL LTD., DR. MARTENS AIRWAIR USA, LLC. | Case No. 3:23-cv-01227-AN |
| Plaintiffs/Counter-Defendant, | STEVEN MADDEN, LTD.'S MOTION FOR JUDGMENT ON THE PLEADINGS |
| v. | |
| STEVEN MADDEN, LTD., CP INTERNATIONAL CORP., and DOES 1–50, | ORAL ARGUMENT REQUESTED |
| Defendants/Counter-Claimant. | |

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

LOCAL RULE 7-1(a) CERTIFICATION.................................................................1

MADDEN'S MOTION ...........................................................................................1

MEMORANDUM IN SUPPORT OF MADDEN'S MOTION ..............................2

   I.     INTRODUCTION .......................................................................................2

   II.    BACKGROUND .........................................................................................3

       A.     **AirWair's Dr. Martens Footwear**................................................3

       B.     **AirWair's Campaigns Against Madden** ......................................4

       C.     **AirWair's Non-Specific and Conclusory Claims and Allegations in The Complaint** .....................................................................................5

   III.   LEGAL STANDARD ..................................................................................9

   IV.   ARGUMENT .............................................................................................10

       A.     **AirWair's Trademark Infringement Claim Is Implausible (First Claim of Relief)** ........................................................................................10

       B.     **AirWair's Federal Unfair Competition Claim (Second Claim of Relief)** ..........16

       D.     **AirWair's Federal and State Dilution Claims (The Third and Sixth Claims of Relief)** ...................................................................................24

       E.     **An Extraterritorial Award is Barred Under the Lanham Act** ...........................27

       F.     **AirWair's State Law Unfair Competition Claims (Fourth and Fifth Claims of Relief)** ...................................................................................28

   V.    CONCLUSION.........................................................................................29

**STEVEN MADDEN, LTD.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page(s)**

*Abitron Austria GmBH v. Hetronic Int'l, Inc.*,
   143 S. Ct. 2522 (2023) ............................................................................ 27

*Adidas Am., Inc. v. Payless Shoesource, Inc.*,
   546 F. Supp. 2d 1029 (D. Or. 2008) .................................................... 26

*AirWair Int'l Ltd. v. Steven Madden, Ltd.*,
   No. 17-cv-01024-SI, 2018 U.S. Dist. LEXIS 7536 (N.D. Cal. Jan. 16, 2018) .................... 4, 5

*Aliign Activation Wear, Ltd. Liab. Co. v. Lululemon Athletica Can., Inc.*,
   No. 21-55775, 2022 U.S. App. LEXIS 22076 (9th Cir. Aug. 9, 2022) ................................ 11

*Almquist v. Synergo, LLC*,
   No. 15-cv-01281-SB, 2016 U.S. Dist. LEXIS 79261 *11, n. 4 (D. Or. May 20, 2016) .......... 7

*AMF, Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir. 1979) ............................................................. 6, 11

*Arcona, Inc. v. Farmacy Beauty, LLC*,
   No. 17-cv-07058-ODW, 2019 U.S. Dist. LEXIS 45231 (C.D. Cal. Mar. 19, 2019) ............. 21

*ArcSoft, Inc. v. CyberLink Corp.*,
   153 F. Supp 3d 1057 (N.D. Cal. 2015) ................................................ 26

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................... 9, 10

*Audemars Piguet Holding S.A. v. Swiss Watch Int'l, Inc., No.*
   No. 12-cv-5423-LAP, 2015 U.S. Dist. LEXIS 3207 (S.D.N.Y. Jan. 12, 2015) .............. 21, 23

*Avery Dennison Corp. v. Sumpton*,
   189 F.3d 868 (9th Cir. 1999) ............................................................ 26

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................... 9, 10, 25

*Blocker v. Black Entm't TV, LLC*,
   No. 3:17-CV-01406-AC, 2019 U.S. Dist. LEXIS 54446 (D. Or. Mar. 6, 2019) .................... 24

*Blocker*,
   2019 U.S. Dist. LEXIS 54446 ............................................................ 25

*Cafasso v. Gen. Dynamics C4 Sys.*,
   637 F.3d 1047 (9th Cir. 2011) ........................................................ 9, 10

*Chavez v. United States*,

**STEVEN MADDEN, LTD.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

683 F.3d 1102 (9th Cir. 2012) ........................................................................ 10, 25

*Chrome Hearts LLC v. Missguided Retail Limited,* ,
   No. 21-cv-06581-MEM, 2022 U.S. Dist. LEXIS 246404 (C.D. Cal. Nov. 11, 2022) .......... 22

*Cohn v. Petsmart, Inc.,*
   281 F.3d 837 (9th Cir. 2002) ........................................................................ 11

*Dahlia v. Rodriguez,*
   735 F.3d 1060 (9th Cir. 2013) ...................................................................... 10

*Dent v. Cox Communs. Las Vegas, Inc.,*
   502 F.3d 1141 (9th Cir. 2007) ........................................................................ 9

*Elliott v. DOD, No. C 97-04141 MEJ,*
   1998 U.S. Dist. LEXIS 16590 (N.D. Cal. Oct. 13, 1998) ...................................... 9

*Gibson Brands, Inc. v. John Hornby Skewes & Co.,*
   No. 14-cv-00609-DDP, 2016 U.S. Dist. LEXIS 179977 (C.D. Cal. Dec. 29, 2016) .......... 23

*Godwin v. Rogue Valley Youth Corr. Facility* (*RVYCF),*
   No. 12-cv-00478-CL, 2013 U.S. Dist. LEXIS 97440 (D. Or. July 12, 2013) ................ 9

*Gucci Am., Inc. v. Guess?, Inc.*,
   868 F. Supp. 2d 207 (S.D.N.Y. 2023) ............................................................ 21

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
   896 F.2d 1542 (9th Cir. 1989) ........................................................................ 9

*ILC Trademark Corp. v. Aviator Nation, Inc.,*
   No. 2:17-cv-07975-MWF, 2020 U.S. Dist. LEXIS 220663 (C.D. Cal. Nov. 24, 2020) ....... 11

*JL Powell Clothing LLC v. Powell,*
   No. 2:13-CV-00160-NT, 2013 U.S. Dist. LEXIS 112370 (D. Me. Aug. 9, 2013) ............. 28

*Lockman Found. v. Evangelical All. Mission*,
   930 F.2d 764 (9th Cir. 1991) ........................................................................ 10

*Maker's Mark Distillery, Inc. v. Diego N. Am., Inc.*,
   703 F. Supp. 2d 671 (W.D. Ken. 2010) .......................................................... 26

*Mintz v. Subaru of Am., Inc.,*
   716 Fed. App'x 618 (9th Cir. 2017) ......................................................... *passim*

*Official Airline Guides, Inc. v. Goss*,
   6 F.3d 1385 (9th Cir. 1993) ........................................................................ 11

*One Indus., L.L.C. v. Jim O'Neal Distrib.*,
   578 F.3d 1154 (9th Cir. 2009) .................................................................. 11, 12

**STEVEN MADDEN, LTD.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

*Pinterest, Inc. v. Pintrips, Inc.*,
    140 F. Supp. 3d 997 (N.D. Cal. 2015) ................................................................ 26

*Playvision Labs, Inc. v. Nintendo of Am., Inc., No. C*
    14-05365 CRB, 2015 U.S. Dist. LEXIS 64815 (N.D. Cal. May 18, 2015) ......................... 24

*Schoene v. Christensen, No. 23-cv-00693-AN*,
    2023 U.S. Dist. LEXIS 139925 (D. Or. Aug. 10, 2023) ........................................ 28

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ..................................................................... 10

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763 (1992) ............................................................................... 16

**Statutes**

15 U.S.C. § 1114 ..................................................................................... 21, 27
15 U.S.C. § 1117 ......................................................................................... 1
15 U.S.C. § 1125 .................................................................................. *passim*
15 U.S.C. § 1127 ..................................................................................... 21, 24
15 U.S.C. §§ 1114 ....................................................................................... 27

**Rules**

Fed. R. Civ. P. 8 ......................................................................................... 9
Fed. R. Civ. P. 12 .................................................................................. *passim*
Fed. R. Evid. 201 ........................................................................................ 7
Local R. Civ. P. 7-1 ...................................................................................... 1

**Other Authorities**

J. Thomas McCarthy,
    MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION (5th ed. 2023) .................... *passim*

**STEVEN MADDEN, LTD.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

## LOCAL RULE 7-1(a) CERTIFICATION

Pursuant to Local Rule 7-1(a), counsel for Steven Madden, Ltd. ("Madden") certifies that it conferred via a live teleconference with counsel for Plaintiffs (collectively, "AirWair") regarding the substance of this motion.[1] The parties were unable to resolve the matters subject to this motion.

## MADDEN'S MOTION

Pursuant to Federal Rule of Civil Procedure 12(c), Madden respectfully moves for judgment on the pleadings dismissing the following claims which are facially implausible:

(1)  AirWair's federal trademark infringement claim (ECF No. 1, Complaint for Trademark Infringement ("Complaint"), First Claim of Relief);

(2)  AirWair's claim alleging federal unfair competition (*id*., Second Claim of Relief);

(3)  AirWair's counterfeiting allegations (*id*., First Claim of Relief) and its request for an award of statutory damages and/or treble the actual damages awarded for use of a counterfeit mark under 15 U.S.C. § 1117(b)-(c) (*id*., ¶¶94-95);

(4)  AirWair's federal and state dilution claims (*id*., Third and Sixth Claims of Relief);

(5)  AirWair's request for relief arising from footwear sold internationally (*id*., ¶92); and

(6)  AirWair's state law unfair competition claims (*id*., Fourth and Fifth Claims of Relief).

---

[1] Following the meet and confer, Plaintiffs stated they would abide by *Hectronic* in seeking damages, discussed *infra*, but did not explicitly agree to withdraw their request for relief related to international sales.

**STEVEN MADDEN, LTD.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

## MEMORANDUM IN SUPPORT OF MADDEN'S MOTION

### I.    INTRODUCTION

AirWair seeks to stifle legitimate competition with many implausible claims against Madden based on wholly inapplicable registered and alleged unregistered trade dresses, hoping one sticks.  These claims are facially implausible and ripe for dismissal.  The issues to be addressed in this case can and should be significantly streamlined (if not eliminated) pursuant to Fed. R. Civ. P. 12(c), which will only serve to reduce the parties' costs and conserve the Court's resources.

In the Complaint, AirWair asserts six different claims of trademark infringement, unfair competition, and trademark dilution based on four registered trademarks and two unregistered trade dresses (the "Asserted AirWair IP").  That IP relates to design/style features of Dr. Martens boots or sandals, and focuses on the color (e.g., yellow) of stitches on the welt and the use of two distinct color tones (e.g., a dark and light layer) on the sole edge.  While AirWair contends that these are the features it is known for, the Complaint glosses over the fact that the accused Madden shoes ("Disputed Footwear") *lack* these critical features.  Under Rule 12(c), the Court should enter a judgment on the pleadings dismissing these implausible claims.

The Complaint is so vague and broad that AirWair generally lumps together all Asserted AirWair IP and contends that all Disputed Footwear infringe all Asserted AirWair IP.  That is facially implausible.  For example, AirWair asserts claims of trademark infringement, unfair competition, and dilution based on trademark Registration No. 2,437,751 against the Disputed Footwear—four boots, oxfords, and two sandals. The '751 Registration requires "yellow stitching" and a "two-tone grooved sole edge," yet all Disputed Footwear has stitching that is *not* yellow and the sole edge is monotone (black).  In its pleadings, "AirWair *admits* that the Disputed Footwear

***does not*** display yellow stitching." (ECF No. 23 ("Plaintiffs' Answer"), ¶20).[2] Given the ***complete absence*** of the features of the '751 Registration, AirWair's lumped infringement, unfair competition, and dilution claims are implausible and should be dismissed for that reason alone.

AirWair's claims are so broad that the Asserted AirWair IP for boot features are asserted against sandals and oxfords, and its IP directed to sandal features are asserted against boots and oxfords.  It is implausible that sandals and an oxford include boot features, and vice versa.

The Complaint also includes requests statutory and enhanced damages for counterfeiting under the Lanham Act.  The Complaint, however, does not include any separate counterfeiting claims and any such claims would be implausible since Madden is not passing off its shoes as authentic AirWair shoes.  Indeed, Madden labels its shoes with STEVE MADDEN brand names.  Thus, AirWair's request for counterfeiting damages should be dismissed.

Finally, the Complaint seeks Madden's profits for shoes sold internationally.  This is not a plausible claim because recent Supreme Court precedent held that the Lanham Act is not extraterritorial.  Thus, AirWair's request for Madden's international profits must be dismissed.

Now is the time to dismiss futile claims of the case before costs and judicial resources are needlessly expended.

## II.    BACKGROUND

### A.  AirWair's Dr. Martens Footwear

AirWair sells Dr. Martens footwear, including "combat boots" including common design features—e.g., leather uppers attached to thick outsoles with stitching, lace-up closures with grommets/buckles, treads for traction, and heel tabs.  (Complaint, ¶¶ 17, 20, 41).  Dr. Martens

---

[2] All emphasis added herein unless otherwise noted.

referenced in the Complaint, including the below examples, prominently display a contrasting, yellow stitch on the midsole.  They also include a large, black heel loop with the words "AirWair with Bouncing Soles" in yellow and double layered and two-toned soles. (Complaint, ¶¶20, 24).

 

As discussed below, somewhere along the line, AirWair began a campaign to unlawfully and unreasonably expand the scope of its purported trademark and trade dress rights to claim that its rights merely encompass contrasting welt stitching ***regardless of color***, both at the USPTO and in litigation.  Here, it also asserts infringement claims against combat-style boots that ***do not*** include the supposedly distinctive black and yellow heel loops or soles that are not two-toned and omit double layers that Dr. Martens.  AirWair appears to be seeking to monopolize generic, combat style boots, irrespective of the design features Dr. Martens footwear is purportedly known for.

### B.  AirWair's Campaigns Against Madden

In 2017, AirWair filed a previous lawsuit against Madden asserting that certain footwear violated AirWair's purported trade dress rights for certain Dr. Martens shoes.  (Complaint, ¶38).  Madden denied all liability and asserted affirmative defenses, including that the asserted trade dress had not acquired secondary meaning, was generic, and failed to function as a trademark.  (Answer, *AirWair Int'l Ltd. v. Steven Madden, Ltd.*, No. 17-cv-01024-SI, Dkt. 15 (N.D. Cal. May 24, 2017)).  In 2018, the parties entered into a confidential settlement agreement and that case was

dismissed with prejudice.  (Complaint, ¶38; *AirWair Int'l Ltd. v. Steven Madden, Ltd.*, No. 17-cv-01024-SI, 2018 U.S. Dist. LEXIS 7536 (N.D. Cal. Jan. 16, 2018)).

Apparently unsatisfied with the negotiated terms of the 2018 settlement, AirWair filed this suit without prior notice, asserting newly broadened purported trade dress while at the same time implying that Madden is a repeat infringer that has willfully violated the 2018 agreement—without asserting a claim for breach of contract.  (Complaint, ¶¶40-45; Plaintiffs' Answer, ¶19).

**C.   AirWair's Non-Specific and Conclusory Claims and Allegations in The Complaint**

AirWair alleges it owns two common law trade dresses (the "Jadon Trade Dress" and "Zebrilus Trade Dress") and four registered marks (Reg. Nos. 2,437,751; 5,067,692; 7,039,347; and 7,039,348, collectively, the "AirWair Trademark Registrations").  (Complaint, ¶¶18-30).  The Jadon Trade Dress, Zebrilus Trade Dress, and AirWair Trademark Registrations (collectively, the "Asserted AirWair IP") are limited to the sole of the shoe; except for a heel loop claimed in some of the IP for a boot style, no claim is made with respect to the upper portion of the shoe.  (*Id.*).

The Complaint asserts six causes of action against Madden shoe styles, namely, four combat boots, an oxford shoe, and two sandals ("Disputed Footwear").  (Complaint, ¶¶41-42). The causes of action include claims of trademark infringement under the Lanham Act (Count I), unfair competition under the Lanham Act, the laws of 13 different states, and common law (Counts II, IV, and V), and dilution under the Lanham Act and the laws of 38 states (Counts III and VI).

The Complaint includes broad and conclusory allegations that confusingly lump the different Asserted AirWair IP together as if they were a unitary mark, and then implausibly asserts that all Disputed Footwear infringe the lumped Asserted AirWair IP.  For example, the Complaint asserts that all Disputed Footwear infringe AirWair's Zebrilus Trade Dress for sandals, including Madden's combat boots. (Complaint, ¶¶41, 61-63).

**STEVEN MADDEN, LTD.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

**Zebrilus Trade Dress**



**Accused Madden Boot**



AirWair's lumping strategy creates implausible claims that are not curable by amendment even when the Asserted AirWair IP relating to boots is asserted against Madden's boots.  For example, AirWair's '751 Registration claims "(1) yellow stitching in the welt area and (2) a two-tone grooved sole edge."  (Complaint, at 8).  The Complaint self-servingly alleges that the similarities between Madden's boots and the '751 Registration are "obvious," but does not identify any Madden shoe that has yellow stitching or a two-two tone grooved sole edge, as there is none.[3]  The differences are actually obvious.  All Disputed Footwear includes stitching of another color (i.e., white) and a monotone (i.e., black) sole edge, as shown in the following exemplary image of a Madden boot (Complaint, ¶41).



---

[3] The legal test is not similarity, but rather whether Madden's boots are ***confusingly*** similar to a ***protectable feature***.  *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).

AirWair's assertion of the alleged unregistered Jadon Trade Dress is another example of the implausible and uncurable claims.  As discussed below, the Jadon Trade Dress allegedly comprises six design elements, including a ***distinctive***, double-layered platform sole and a yellow and black heel loop," which are shown in the Jadon boot below.  (Complaint, ¶¶19-20).  As shown: (1) the double layer has two distinct layers, a lower glossy black layer, and an upper matte black layer to create a two-tone appearance; and (2) the heel loop includes an outer surface with a black background having "AirWair" printed in yellow, and inner surface with a reverse appearance.

 

(left image from Complaint, ¶20, annotations in red dotted lines; right image from *Jadon Boot Smooth Leather Platforms*, Dr. Martens, https://www.drmartens.com/us/en/jadon-boot-smooth-leather-platforms-white/p/15265100 (last accessed Jan. 10, 2024)).[4]

The Disputed Footwear completely omits both features, yet somehow AirWair still alleges that the Disputed Footwear infringes the Jadon Trade Dress (*see* images from Complaint, ¶41).

---

[4] The Court should take judicial notice that the right image accurately reflects the heel loop of the Jadon Trade Dress.  Fed. R. Evid. 201(b); *Almquist v. Synergo, LLC*, No. 15-cv-01281-SB, 2016 U.S. Dist. LEXIS 79261 *11, n. 4 (D. Or. May 20, 2016) (judicial notice from parties' websites).

**STEVEN MADDEN, LTD.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

For example, in the above Madden shoe, the sole has a single monotone layer, and the heel loop is maroon.  What makes AirWair's claim even more implausible is the omission of these features that AirWair admitted in the definition of the trade dress as "distinctive, and in the pleadings as what makes Dr. Martens "recognizable."  (Plaintiffs' Answer, ¶20).

The lumping problem also permeates throughout AirWair's dilution claims.  As discussed below, the legal foundation of any dilution claim is that the asserted mark or trade dress must be extremely famous, i.e., household recognition.  Here, the Complaint lumps all four registered marks and two alleged unregistered trade dresses together as if they are a unitary mark and simply asserts, in conclusory fashion, that they are all famous.  For example, the Complaint concludes that "The Jadon Trade Dress and AirWair Trademark Registrations qualify as famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and such marks have been continuously used and never abandoned." (Complaint, ¶¶18, 35; *see also id.*, ¶¶65-66 ).[5]  These allegations are facially deficient because each mark and trade dress asserted as a basis for a dilution claim must be famous *on its own* and the Complaint is devoid of factual allegations as to why or how each mark or trade dress in is *individually* famous.

As demonstrated above and further discussed below, AirWair clearly attempts to distract the Court from the futility of its claims by asserting all Asserted AirWair IP against all Disputed Footwear, when it is plain to see that it is neither true nor supported by the law.  Such a tactic cannot salvage such implausible claims.

---

[5] Remarkably, the Complaint's federal claim for dilution (Count III) does not include even a conclusory allegation that the Zebrilus Trade Dress is famous, yet it asserts the Zebrilus Trade Dress has been diluted.

**STEVEN MADDEN, LTD.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

### III.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  The standard for determining a Rule 12(c) motion for judgment on the pleadings is "the same standard applicable to the corresponding 12(b) motion." *Elliott v. DOD*, No. C 97-04141 MEJ, 1998 U.S. Dist. LEXIS 16590, at *4 (N.D. Cal. Oct. 13, 1998) (quotation and citation omitted).  *See also Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).  To survive a Rule 12(c) motion, "the complaint's factual allegations, together with all reasonable inferences, [must] state a plausible claim for relief."  *Cafasso*, 637 F.3d at 1054 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The complaint must contain "well-pleaded facts" which "permit the court to infer more than the mere possibility of misconduct[.]"  *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

"Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law."  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989).  Thus, the Court should dismiss any claim in AirWair's Complaint that does not contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Court must accept as true specific factual allegations in the complaint, unless contradicted by a document that is authentic and integral to plaintiff's claims. *Dent v. Cox Communs. Las Vegas, Inc.*, 502 F.3d 1141, 1143 (9th Cir. 2007).  And while the Court must construe all inferences in the light most favorable to the nonmoving party, *Godwin v. Rogue Valley Youth Corr. Facility (RVYCF)*, No. 1:12-cv-00478-CL, 2013 U.S. Dist. LEXIS 97440, at *1-2 (D. Or. July 12, 2013), "it is within [the Court's] wheelhouse to reject, as implausible,

allegations that are too speculative to warrant further factual development." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013) (citing *Twombly*, 550 U.S. at 570).

Further, the Court need not accept conclusory allegations, unreasonable inferences, or "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quotation and citation omitted); *Cafasso*, 637 F.3d at 1054; *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) ("Mere conclusory statements in a complaint and 'formulaic recitation[s] of the elements of a cause of action' are not sufficient." (brackets in original) (quoting *Twombly*, 550 U.S. at 555). A court therefore "discounts conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible." *Chavez*, 683 F.3d at 1108 (citing *Iqbal*, 556 U.S. at 678). The point of this critical gatekeeping function is to ensure that claims are sufficiently plausible "such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). When it is apparent that amendment of a complaint would be futile, it is proper to deny leave to amend. *See, e.g., Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764, 772 (9th Cir. 1991).

## IV.    ARGUMENT

The sole question before the Court in this motion is whether AirWair has pleaded facts which, taken as true, establish that AirWair's claims are plausible. As discussed below, the Complaint makes clear that AirWair has not and cannot do so as a matter of law.

### A. AirWair's Trademark Infringement Claim Is Implausible (First Claim of Relief)

Pursuant to Rule 12(c), Madden requests a judgment as a matter of law that it does not infringe AirWair's registered marks as set forth in the First Claim of Relief and that such claim be dismissed.

**STEVEN MADDEN, LTD.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

For its trademark infringement claim, AirWair must prove by a preponderance of the evidence that Madden "used the mark without the consent of the plaintiff in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods." *ILC Trademark Corp. v. Aviator Nation, Inc.*, No. 2:17-cv-07975-MWF(JPRx), 2020 U.S. Dist. LEXIS 220663, at *21 (C.D. Cal. Nov. 24, 2020). Confusion must be "probable, not simply a possibility." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842 (9th Cir. 2002).

In this Circuit, likelihood of confusion is evaluated using the non-exclusive *Sleekcraft* factors, which look to the: "1. strength of the mark; 2. proximity of the goods; 3. similarity of the marks; 4. evidence of actual confusion; 5. marketing channels used; 6. type of goods and degree of care likely to be exercised by the purchaser; 7. defendant's intent in selecting the mark; and 8. likelihood of expansion of product lines." *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1391-92 (9th Cir. 1993) (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)). These factors are flexible, and not all factors are equal: "applying the *Sleekcraft* test is not like counting beans", "[s]ome factors are much more important than others, and the relative importance of each individual factor will be case-specific." *One Indus., L.L.C. v. Jim O'Neal Distrib.*, 578 F.3d 1154, 1162 (9th Cir. 2009) (cert denied). Additionally, "[a]lthough some factors -- such as the similarity of the marks and whether the two companies are direct competitors -- will always be important, it is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors." *Id.* Accordingly, "a party need not demonstrate that every factor supports its position to prevail." *Aliign Activation Wear, Ltd. Liab. Co. v. Lululemon Athletica Can., Inc.*, No. 21-55775, 2022 U.S. App. LEXIS 22076, at *2 (9th Cir. Aug. 9, 2022). For example, in a case involving competing designs on motorcycle helmets, (to wit:  and  ), even though the products competed directly and were sold in similar

**STEVEN MADDEN, LTD.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

channels of trade, summary judgment was appropriate because, *inter alia*, the marks were not visually similar. *One Indus., L.L.C.,* 578 F.3d at 1162-1164.

Because of the importance of the similarity of the marks, "[l]ikelihood of confusion can be determined at the pleading stage where the parties have obviously dissimilar marks." *Mintz v. Subaru of Am., Inc.*, 716 Fed. App'x 618, 620 (9th Cir. 2017) (affirming dismissal). Here, the AirWair Trademark Registrations and Disputed Footwear are obviously dissimilar and can be disposed of pursuant to Rule 12(c). As shown below, for the sake of brevity and by way of example, AirWair's lumped assertion in the First Claim of Relief that all Disputed Footwear infringe all AirWair Trademark Registrations is implausible and should be dismissed.

**1. AirWair's Infringement Claim For The '751 Registration Is Implausible**

As shown in the Complaint and below, the '751 Registration requires the combination of (1) *yellow* stitching in the welt area and (2) a *two-tone* grooved sole edge. Yet, as shown below, none of the Disputed Footwear includes either of these elements. Instead, the Disputed Footwear *all* have non-yellow (white) stitching and a monotone (black) sole edge. Indeed, "AirWair *admits* that the Disputed Footwear *does not* display yellow stitching." (Plaintiffs' Answer, ¶20).

| '751 Registration - Image[6] | '751 Registration - Description of Mark |
|---|---|
|  | The mark consists of the combination of:<br>(1)  yellow stitching in the welt area and<br>(2)  a two-tone grooved sole edge<br><br>The drawing of the welt stitch is lined for the color yellow, and claim is made to color. |

---

[6] The '751 Registration is attached as Exhibit 1 to the Complaint.

**STEVEN MADDEN, LTD.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

| Disputed Footwear[7] |
|---|
|  |

While AirWair may argue that surveys and discovery are needed to gauge consumer confusion, these design differences are so plainly obvious that no admissible survey could plausibly show that consumer confusion for a protectable interest is ***due to the '751 Registration***. *Mintz*, 716 Fed. App'x at 620 (affirming dismissal of infringement claim at the pleading stage). Because no reasonable consumer could conclude that the '751 Registration and Disputed Footwear are confusingly similar, the lumped First Claim of Relief is implausible.  No material issue of fact remains to be resolved regarding the '751 Registration and the Court should issue a judgment on the pleadings dismissing the lumped First Claim of Relief for at least the reasons that the Disputed Footwear do not infringe the '751 Registration.

---

[7] Full size images of the Disputed Footwear are attached as Exhibit 5 to the Complaint. (Top, left to right: Bettyy White (Complaint at 43-45), Bettyy Black (*id*. at 37-39), Bettyy Burgandy (*id*. at 41-42), Hawke Combat Boot (*id.* at 52-54); middle: Brenton Black Patent (*id*. at 34-36); bottom, left to right: Dizzy Platform Slide Sandal (*id*. at 46-48), Dorite Platform Sandal (*id*. at 49-51)). These images are reproduced in the tables throughout.

**STEVEN MADDEN, LTD.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

**2. AirWair's Infringement Claim For The '692 Registration Is Implausible**

As shown in chart below, Registration No. 5,067,692 is for a boot design and requires (1) longitudinal ribbing and a ***dark color band over a light color on the outer sole edge***, (2) welt stitching, and (3) ***a tab*** at the top back heel of footwear.  (Complaint at 8).  AirWair's assertion that all Disputed Footwear of infringing this registration, is implausible for at least two reasons.

***First***, as shown below, AirWair asserts that ***all*** Disputed Footwear infringe the '692 Registration.  Because the '692 Registration recites a tab "located at the top back heel", it is directed to a boot.  The accused Madden oxfords and sandals are not boots and do not have a pull tab, yet AirWair asserts they infringe the '692 Registration.  This lumped infringement claim is implausible for that reason alone.

| '692 Registration – Image[8] | '692 Registration - Description of Mark |
|---|---|
|  | The mark consists of:<br>(1) longitudinal ribbing and a dark color band over a light color on the outer sole edge,<br>(2) welt stitching, and<br>(3) a tab located at the top back heel of the footwear |
| **Disputed Footwear** ||
|  ||

---

[8] The '692 Registration is attached as Exhibit 2 to the Complaint.



***Second***, none of the Disputed Footwear have the required "***dark color band <u>over</u> a light color*** on the outer sole edge."  Instead, the Disputed Footwear all have a monotone (black) sole edge, as shown in the above chart and in the below exemplary images of the Disputed Footwear.[9]



---

[9] Asserted Registration No. 7,039,347 similarly recites "contrast stitching in the welt area and a two-tone grooved sole edge."  (Complaint, Ex. 3).  This is very similar to the requirements in the '692 and '751 Registrations.  Thus, there is no infringement of the '347 Registration for similar reasons (e.g., no two-tone sole) as those registrations are not infringed.

**STEVEN MADDEN, LTD.'S MOTION FOR JUDGMENT ON THE PLEADINGS**



In view of the foregoing, no material issue of fact remains to be resolved regarding the '692 Registration.  Again, while AirWair may argue that surveys and discovery are needed to test consumer confusion, these design differences are so plainly obvious that no admissible survey could plausibly show consumer confusion is *due to the '692 Registration*.  *Mintz*, 716 Fed. App'x at 620.  As such, the lumped First Claim of Relief implausible.

No material issue of fact remains to be resolved regarding the '692 Registration.  Thus, this Court should issue a judgment on the pleadings dismissing the lumped First Claim of Relief for at least the reason that the Disputed Footwear do not infringe the '692 Registration.

**B.  AirWair's Federal Unfair Competition Claim (Second Claim of Relief)**

The Second Claim of Relief asserts a lumped claim for trademark infringement and Federal Unfair Competition of all the Asserted AirWair IP, including the Zebrilus Trade Dress and Jadon Trade Dress, against all Disputed Footwear.  The same legal standards for Lanham Act trademark infringement of a registered mark apply to Lanham Act unfair competition claims directed to unregistered trade dress configurations and registered marks.  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992).  Pursuant to Rule 12(c), Madden requests a judgment as a matter of law that it has not committed any acts of trademark infringement or unfair competition as set forth in AirWair's Second Claim of Relief and that such claim should be dismissed.

For at least the above reasons regarding the First Claim of Relief, AirWair cannot establish any plausible claim of unfair competition or trademark infringement for the Second Claim of Relief. AirWair also cannot assert a plausible claim for the Second Claim of Relief with respect to the Zebrilus Trade Dress or Jadon Trade Dress against all Disputed Footwear.

### 1. The Unfair Competition Claim For the Jadon Trade Dress Is Implausible[10]

In its Complaint, AirWair describes the alleged unregistered Jadon Trade Dress as set forth in the below chart. (ECF 1, ¶19). A Jadon boot embodying the Jadon Trade Dress is reproduced below, along with the Disputed Footwear subject to the Second Claim Of Relief.

| Jadon Boot | Jadon Trade Dress |
|---|---|
|  | The overall configuration and impression of the Jadon® footwear, including the combination of the following features: (1) contrast welt stitching; (2) a grooved sole edge; (3) an angled heel; (4) a distinctive, double-layered platform sole; (5) the AirWair® "Quad" side view cleat pattern; (6) a yellow and black heel loop. |
| **Disputed Footwear** | |
|  | |

---

[10] Madden only challenges infringement of AirWair's marks and trade dress for purposes of this motion and makes no admission as to their validity or enforceability.



This lumped infringement claim is implausible for at least several reasons.

***First***, there are significant and obvious differences between the Disputed Footwear and the Jadon Trade Dress.  As shown below, the "***distinctive***, double-layered platform sole" of the Jadon boot has two layers, namely, a lower glossy black layer, and an upper matte black layer.  None of the Disputed Footwear have two layers, they all have a single monotone black layer.  This is evident from the chart depicting the heels of the Disputed Footwear in Section IV.A and is further illustrated by the below annotations.  (Complaint, ¶20, Ex. 5 (annotations added)).



Moreover, none of the Disputed Footwear have a black and yellow heel tab.  To the extent they include a heel tab, it is monotone and in a color other than yellow, such as white or maroon. This is undisputed.  Indeed, "AirWair ***admits*** that the Disputed Footwear ***does not*** display . . . black-and-yellow heel tabs" which is one of the "features that make Dr. Martens footwear recognizable as Dr. Martens footwear."  (Plaintiffs' Answer, ¶20).  In view of the complete absence

of the "distinctive" double-layered sole and the black and yellow heel tab that AirWair claims make Dr. Martens footwear recognizable, no reasonable consumer could ever conclude that the Jadon Trade Dress and any Disputed Footwear are confusingly similar.  Again, while AirWair may argue that surveys and discovery are needed to test consumer confusion, these design differences are so plainly obvious that no survey for a protectable interest could plausibly show that any consumer confusion is ***due to the Jadon Trade Dress***.  *Mintz*, 716 Fed. App'x at 620.

***Second***, AirWair asserts the Jadon Trade Dress, a ***boot*** design, against ***all*** Disputed Footwear, including ***oxfords and sandals***.  This lumped assertion of the Jadon Trade Dress for boots against oxfords and sandals is an implausible infringement claim and should be dismissed.

Thus, AirWair's lumped unfair competition claims in the Second Claim of Relief are not plausible and are ripe for judgment on the pleadings under Rule 12(c).

### 2.  The Unfair Competition Claim For The Zebrilus Trade Dress Is Implausible

AirWair describes the alleged unregistered Zebrilus Trade Dress as set forth in the below chart. (Complaint, ¶22).  An AirWair sandal embodying the Zebrilus Trade Dress is reproduced below, along with the Disputed Footwear charged with unfair competition.

| Zebrilus Sandal | Zebrilus Trade Dress |
|---|---|
|  | The overall configuration and impression of the Zebrilus sole unit, including the combination of the following features: <br><br>(1)  a yellow welt stitch; <br>(2)  a grooved sole edge; <br>(3)  a distinctive two-tiered welt area with rounded edges; <br>(4)  a grooved footbed edge; and <br>(5)  the AirWair® "Zebrilus" side view cleat pattern. |

| Disputed Footwear |
|---|
|  |

This lumped infringement claim is implausible for at least two reasons.

**First,** none of the Disputed Footwear has AirWair's allegedly iconic yellow stitching. Given a complete absence of this allegedly iconic design element, AirWair's unfair competition claims based on the Zebrilus Trade Dress are implausible and the Second Claim of Relief should be dismissed for this reason alone. Here again, these stylistic differences are so plainly obvious that no admissible survey could plausibly show that any consumer confusion for a protectable interest is **due to the Zebrilus Trade Dress**. *Mintz*, 716 Fed. App'x at 620.

**Second,** AirWair asserts the Zebrilus Trade Dress, a **sandal** design, against all Disputed Footwear, including **boots** and **oxfords**. This is not a plausible infringement claim and the Second Claim of Relief should be dismissed for this reason alone. In addition to omitting the yellow welt stich, the four boots and oxford of the Disputed Footwear, omit other required elements of the

Zebrilus Trade Dress, including a "distinctive" two-tiered welt area with rounded edges; a grooved footbed edge; and the AirWair® "Zebrilus" side view cleat pattern.

Thus, AirWair's unfair competition claims in the Second Claim of Relief are not plausible and are ripe for judgment on the pleadings under Rule 12(c).

## C. AirWair's Claims Concerning Counterfeiting Are Implausible

AirWair's Complaint does not allege counterfeiting as a separate cause of action. Yet, the First Claim of Relief only mentions counterfeiting in passing and then AirWair seeks counterfeiting damages under 15 U.S.C. § 1114. (Complaint, ¶¶ 58-59, 94-95). These claims are not plausible and fail as a matter of law. As such, this Court should issue a judgment on the pleadings that Madden has not engaged in counterfeiting and AirWair is not entitled any counterfeiting damages.

The Lanham Act defines a "counterfeit" mark as "a *spurious* mark which is *identical with, or substantially indistinguishable from*, a registered mark." 15 U.S.C. § 1127. "Courts consider trademark counterfeiting as the 'hard core or first degree . . . trademark infringement that seeks to trick the consumer into believing he or she is getting a genuine article, rather than a colorable imitation." *Arcona, Inc. v. Farmacy Beauty, LLC*, No. 2:17-cv-07058-ODW (JPR), 2019 U.S. Dist. LEXIS 45231, at *5 (C.D. Cal. Mar. 19, 2019) (quoting *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2023)), *aff'd*, 976 F.3d 1074 (9th Cir. 2020); *see also* J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION (5th ed. 2018) § 25:15.50 (2022) (hereinafter, "MCCARTHY ON TRADEMARKS*"*) ("Counterfeiting is the act of producing or selling a product with a sham trademark that is an intentional and calculated reproduction of the genuine trademark."). "For this reason, courts have uniformly applied this provision to products that are *stitch-for-stitch copies* of those of another brand." *Gucci*, 868 F. Supp. 2d at 242.

**STEVEN MADDEN, LTD.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Thus, to state a claim for counterfeiting, AirWair must plausibly allege that Madden used a "spurious mark" that "is identical with, or substantially indistinguishable from," the AirWair Trademark Registrations. 15 U.S.C. § 1127.  AirWair must also plausibly allege that Madden was "***passing off***" its goods ***as AirWair's***, "rather than a 'colorable imitation.'" *Audemars Piguet Holding S.A. v. Swiss Watch Int'l, Inc.*, No. 12 Civ. 5423 LAP, 2015 U.S. Dist. LEXIS 3207, at *7 (S.D.N.Y. Jan. 12, 2015) (citation omitted).   In sum, "to properly plead a case of civil counterfeiting it is not sufficient for plaintiff to make a conclusory allegation that the accused use is 'nearly identical' and a 'counterfeit.'" *Chrome Hearts LLC v. Missguided Retail Limited*, No. 2:21-cv-06581-MEMF-AGR, 2022 U.S. Dist. LEXIS 246404, at *8 (C.D. Cal. Nov. 11, 2022) (quoting 4 McCarthy on Trademarks § 25:15.50).

Here, AirWair has failed to plead the requisite statutory elements and has made only conclusory allegations that Disputed Footwear has used a "counterfeit . . . imitation" of the AirWair Trademark Registrations. (Complaint, ¶57).  Such allegations are insufficient to plausibly state a counterfeiting "claim." *See* 4 McCarthy on Trademarks § 25:15.50.  Nor are these allegations curable since, as shown in the exemplary images below, the Disputed Footwear does not have many elements claimed in the AirWair Trademark Registrations, including, for example:

- "yellow stitching in the welt area and a two-tone grooved sole edge" of the '751 Registration;

- "dark color band over a light color on the outer sole edge" of the '692 Registration; and/or

- "two-tone grooved sole edge" of the '347 Registration.

**STEVEN MADDEN, LTD.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

| Disputed Footwear |
|---|
|  |

Because the Disputed Footwear cannot be plausibly pled to be "identical to," "indistinguishable from," or a "stitch-for-stitch" copy of the AirWair Trademark Registrations, they cannot possibly be counterfeit goods.

Nor is Madden passing off its products as authentic AirWair Dr. Martens shoes. Indeed, the physical samples of Disputed Footwear that AirWair depicts in the complaint use STEVE MADDEN and MADDEN GIRL house marks on the inner soles.[11] Madden's use of its own mark, and the absence of any use of the AirWair or Dr. Martens marks, indicates that the Disputed Footwear is not "counterfeit." *See Gibson Brands, Inc. v. John Hornby Skewes & Co.*, No. 14-cv-00609-DDP (SSX), 2016 U.S. Dist. LEXIS 179977, at *21-22 (C.D. Cal. Dec. 29, 2016) (dismissing counterfeiting claim because accused products included defendant's brand name and were not identical to plaintiff's products); *id.* ("To find that anything less than an identical or

---

[11] If necessary, AirWair should be ordered to submit the physical samples for the Court's review.

substantially indistinguishable product can give rise to a counterfeit claim would risk rendering all trademark infringement claims counterfeiting claims, and, along with it, open up the wider range of statutory penalties and remedies.") (quotation and citation omitted); *Audemars*, 2015 U.S. Dist. LEXIS 3207, at *7 (counterfeiting claims are not viable where "[d]efendants plainly are not passing off their design as [plaintiff's].").  Since the Disputed Footwear are not "stitch-for-stitch copies" of the AirWair Trademark Registrations, they are not counterfeits.

In addition, to support its counterfeiting allegations, AirWair alleges that the Disputed Footwear is "***confusingly similar***" (Complaint, ¶44) to the AirWair Trademark Registrations.  But the Lanham Act's definition of "counterfeit" requires identity or near identity (i.e., "substantially indistinguishable"), not just "confusing" similarity. 15 U.S.C. § 1127.  Other courts have dismissed with prejudice a similarly pled counterfeiting claim.  *See, e.g., Playvision Labs, Inc. v. Nintendo of Am., Inc*., No. C14-05365 CRB, 2015 U.S. Dist. LEXIS 64815, at *1 (N.D. Cal. May 18, 2015).

Pursuant to Rule 12(c), Madden respectfully requests that the Court issue a judgment on the pleadings that Madden has not engaged in counterfeiting and AirWair is not entitled any damages (statutory, enhanced or otherwise) relating to counterfeiting.

### D.  AirWair's Federal and State Dilution Claims (The Third and Sixth Claims of Relief)

AirWair asserts that the Disputed Footwear has diluted the Asserted AirWair IP, the Jadon Trade Dress and the Zebrilus Trade Dress under the Lanham Act and the law of 38 states (see Claims for Relief III and VI).  A legal predicate to a dilution claim is that the mark must be famous, *Blocker v. Black Entm't TV, LLC,* No. 3:17-CV-01406-AC, 2019 U.S. Dist. LEXIS 54446, *16 (D. Or. Mar. 6, 2019)*, and the Complaint insufficiently includes only conclusory allegations concerning fame.  (Complaint, ¶¶18, 35; *see also id.*, ¶¶65-66 ) ("The Jadon Trade Dress and

AirWair Trademark Registrations qualify as famous marks, as that term is used in 15 U.S.C. § 1125(c)(1)").  These allegations are facially implausible for several reasons.

**First**, the Complaint lumps the Jadon Trade Dress and Asserted AirWair IP together as if they were a unitary mark and asserts that they are all famous.  But for a dilution claim to stand, each mark and trade dress must be famous **on its own**.  And the Complaint is devoid of factual allegations as to why or how each mark or trade dress in is **individually** famous.  "Mere conclusory statements in a complaint and 'formulaic recitation[s] of the elements of a cause of action' are not sufficient." *Chavez,* 683 F.3d at 1108 (brackets in original) (quoting *Twombly,* 550 U.S. at 555)).

**Second**, the complaint is devoid of any allegations **for the Asserted AirWair IP** regarding the factors required to prove fame under dilution claim as set forth in 15 U.S.C. § 1125(c)(2)(A). *See, e.g., Blocker*, 2019 U.S. Dist. LEXIS 54446, at *20 (dismissing dilution claim for failure to plead elements of fame, e.g., "reach of advertising or publicity of the mark, the extent of sales of goods and services offered under the mark, or the extent of actual recognition of the mark.").

Instead, AirWair uses misdirection, alleging that "[t]he distinctive trade dress of its iconic footwear has been used by the company **since 1960 and is world famous**. Over a period of nearly **40 years, hundreds of millions** of pairs of shoes, boots, and sandals with the distinctive trade dress have been sold in the United States."  (Complaint, ¶ 15).  But by AirWair's own admission, the Jadon and Zebrilus Trade Dress **respectively did not come into existence until 2013 and 2018.** (Complaint, ¶¶ 18, 21).  Similarly, the asserted '347 and '348 registrations **did not issue until May 2023** and are the subject of cancellation proceedings before the USPTO.

AirWair takes a shortcut for three of the Asserted AirWair IP, pointing to a 2021 jury verdict regarding fame of the Jadon Trade Dress and the '751 and '692 Registrations.  But the jury verdict is not legal precedent and is not a substitute for the pleading requirements to establish fame.

**STEVEN MADDEN, LTD.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

*See,* 15 U.S.C. § 1125(c)(2)(A); *Blocker*, 2019 U.S. Dist. LEXIS 54446, at *20.  And of course, that jury verdict did not involve the Zebrilus Trade Dress or the '347 and '348 Registrations.

      **Third,** the Complaint alleges that the Zebrilus Trade Dress has been diluted, but strangely does not assert that such trade dress is famous, at least for purposes of its federal dilution claim.

      It is very unlikely that amendment would cure these deficiencies.  Proving fame carries a very heavy burden that is not easily satisfied.  *Blocker*, 2019 U.S. Dist. LEXIS 54446, at *16. Fame in the context of dilution is markedly higher than other types of fame; it is "a rigorous standard" that is "difficult to prove."  *ArcSoft, Inc. v. CyberLink Corp.*, 153 F. Supp 3d 1057,1065 (N.D. Cal. 2015) (internal quotations and citations omitted).  Indeed, dilution "is a cause of action 'invented and ***reserved for a select*** class of marks — those marks with such ***powerful consumer associations*** that even non-competing uses can impinge on their value.'"  *Adidas Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1060 (D. Or. 2008).  In the Ninth Circuit, "the requisite level of fame [is] that of a ***household name.***"  *ArcSoft*, 153 F. Supp. 3d at 1065.  Notoriety and large-scale recognition are not enough; for purposes of dilution, the mark must be extremely famous.  It must be "***truly prominent and renow***ned."  *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999).

      Examples of marks that courts have held famous include NIKE, PEPSI, and VISA.  5 MCCARTHY ON TRADEMARKS, §24:107.  To be famous, a mark must be "in the same league" as these marks.  *Maker's Mark Distillery, Inc. v. Diego N. Am., Inc.*, 703 F. Supp. 2d 671, 699 (W.D. Ken. 2010).  For example, courts have declined to hold that the COACH mark, Maker's Mark's trade dress of red dripping wax on a bottle top, and Capri Sun's pouch shaped container for juices are famous.  5 MCCARTHY ON TRADEMARKS, §24:109.  Even demonstrating wide exposure to the public of a mark is insufficient, as in the case of, apps such as Pinterest (25 million monthly users)

and Perfect365 (20 million downloads), which were not famous enough to qualify for a dilution claim. *See Pinterest, Inc. v. Pintrips, Inc.*, 140 F. Supp. 3d 997 (N.D. Cal. 2015); *ArcSoft*, 153 F. Supp. 3d at 1065. It simply is not plausible that the ***sole designs*** on the shoes in the AirWair Asserted IP rise to the level of fame required.

AirWair faces a monumental uphill battle on its dilution claims. Given that the Complaint is completely devoid of any facts that rise to the level of a plausible claim to fame and that the law is not on its side, a judgment on the pleadings pursuant to Rule 12(c) is appropriate here.

### E. An Extraterritorial Award is Barred Under the Lanham Act

As part of its prayer for relief, AirWair also seeks profits and the disclosure of sales figures related to Madden's international sales from the Disputed Footwear (Complaint, ¶92):

> An award of Steve Madden and CPI's profits to AirWair, including disclosure of the number of pairs of Infringing Footwear sold in the United States and ***internationally*** and an accounting for the gross revenue derived from sale of the Infringing Footwear.

Pursuant to Rule 12(c), it is appropriate to deny this relief at this stage of the proceedings.

AirWair, as a matter of law, is not entitled to any revenue derived from "pairs of Infringing Footwear sold . . . internationally," (Complaint, ¶92) as the Lanham Act, under which AirWair seeks relief, is "not extraterritorial." *Abitron Austria GmBH v. Hetronic Int'l, Inc.*, 143 S. Ct. 2522, 2527 (2023). As the Supreme Court has explained:

> In nearly all countries, including in the United States, trademark law is territorial-*i.e.*, "a trademark is recognized as having a separate existence in each sovereign territory in which it is registered or legally recognized as a mark."

*Abitron*, 143 S. Ct. at 2535 (quoting 5 McCarthy On Trademarks §29:1, at 29-4 to 29-5).

Indeed, relief under the Lanham Act is only appropriate where "the claimed infringing use

in commerce is ***domestic***." *Abitron*, 143 S. Ct. at 2527.[12] "[I]f the relevant conduct international sales] occurred in another country, then the case involves an impermissible extraterritorial application" of the Lanham Act. *Id.* at 2529 (internal quotes and citations omitted). Thus, even if Madden's domestic sales may be actionable, any international sales are decidedly not.

This Court should grant the motion for judgment on the pleadings and deny AirWair's request for disclosure of, and profits arising from, any international sales of the Disputed Footwear.

### F.  AirWair's State Law Unfair Competition Claims (Fourth and Fifth Claims of Relief)

AirWair's state law unfair competition claims rise and fall with the federal unfair competition claim, and thus dismissal is appropriate for the same reasons discussed in subsection B. above. *Schoene v. Christensen*, No. 23-cv-00693-AN, 2023 U.S. Dist. LEXIS 139925, *4 (D. Or. Aug. 10, 2023); *see* 5 MCCARTHY ON TRADEMARKS, §22:1.50 (providing precedent showing that California, Colorado, Delaware, George, Hawaii, Illinois, Minnesota, Nebraska, New Mexico, New York, Ohio, and Oklahoma are the "same as or Very Similar to Federal Law"); *JL Powell Clothing LLC v. Powell*, No. 2:13-CV-00160-NT, 2013 U.S. Dist. LEXIS 112370, at *23-24 (D. Me. Aug. 9, 2013) ("Like the federal trademark infringement statutes, Maine's Uniform Deceptive Trade Practices Act […] provides injunctive relief against a person who causes a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services or as to affiliation, connection or association with, or certification by, another") (internal citations and quotations omitted).

---

[12] As the *Abitron* Court made clear, "use in commerce provides the dividing line between foreign and domestic applications of [15 U.S.C. §§ 1114(1)(a) and 1125(a)(1)." While AirWair does not appear to limit its claims to these specific subsections, the logic and reasoning of *Abitron* applies equally to other sections of the Lanham Act which likewise require use in commerce. *See* 15 U.S.C. §1114(1)(b); 15 U.S.C. §1125(c).

**STEVEN MADDEN, LTD.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

## V.   CONCLUSION

For the above reasons, AirWair's First, Second, Third, Fourth, Fifth and Sixth Claims of Relief, as well as its request for counterfeit damages and damages for international sales, must be dismissed for failure to state a claim.

Dated:  January 12, 2024                  **STOEL RIVES LLP**


*/s/ Nathan C. Brunette*
NATHAN C. BRUNETTE, OSB No. 090913
nathan.brunette@stoel.com
TIMOTHY W. SNIDER, OSB No. 034577
timothy.snider@stoel.com
760 S.W. Ninth Ave., Suite 3000
Portland, OR 97205

DOUGLAS A. MIRO (pro hac vice)
dmiro@arelaw.com
OLIVIA A. HARRIS (pro hac vice)
oharris@arelaw.com
**AMSTER ROTHSTEIN & EBENSTEIN LLP**
405 Lexington Avenue
New York, NY 10174

FLOYD A. MANDELL (pro hac vice)
floyd.mandell@katten.com
JULIA L. MAZUR (pro hac vice)
julia.mazur@katten.com
MATTHEW HARTZLER (pro hac vice)
matthew.hartzler@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe St.
Chicago, IL 60661

*Attorneys for Defendant and Counter-Claimant
  Steven Madden, Ltd.*